### FELL v. BERRY et al.

(Supreme Court, Appellate Division, First Department. February 7, 1908.)

1. TRADE UNIONS—OFFICERS—AUTHORITY—CONTRACTS—REQUISITES.

> At a convention of the central organization of a labor union the question of securing for the members of the subordinate unions a change from a nine-hour to an eight-hour day at the same wages as for a nine-hour day received consideration. The outgoing board of directors recommended that the incoming board be instructed to meet with a like committee of a similar organization representing the employers of members of the subordinate unions, to get some concessions towards an eight-hour day within a reasonable time; the committee to have power to sign an agreement for an eight-hour day if such day could be brought within a reasonable time, and, if not, to report back to the next convention of the union. This recommendation was adopted, and pursuant thereto a committee of the union, consisting of its five chief officers, met a like committee of the other organization and negotiated an agreement therewith which provided for the continuance of the agreement then existing between the two organizations for a term of five years, except that 54 hours, which then was a week's work, should remain so only until a date 20 months off, after which 48 hours should be a week's work. The agreement also was made subject to ratification by the convention of the employers' association. Before this convention met, the next annual convention of the union occurred, and the agreement was there ratified, with the provision that the clause providing for open shop be stricken out and an amendment inserted providing for nine hours' pay for the eight-hour day. The convention of the employers' organization refused to accept this amendment and no further understanding between the two organizations was reached. *Held*, that there was no contract between the two organizations; the agreement negotiated by

the committee of the union not being within their instructions, as not providing against a reduction in pay commensurate with the shortening of the working day, and not having been ratified, except with amendments which were not accepted.

2. SAME—RATIFICATION.

A tentative agreement, entered into between committees representing a central organization of employers and a like committee of the central organization of a trade union was not ratified by a subordinate union by the act of two of the officers of the central union signing an agreement purporting to be such a ratification with a subordinate association of the employers' central organization, without authority from the local union or the central organization of which they were officers.

3. SAME.

A tentative agreement, entered into between a committee representing a central organization of employers and a like committee of the central organization of a trade union, was not ratified by the act of two members of a subordinate union signing an agreement purporting to be such a ratification, without authority from the subordinate union to sign such agreement, and especially so where such agreement was signed by the members of the local union under misapprehension as to its provisions, brought about by misrepresentation.

Appeal from Special Term.

Action by E. Lawrence Fell, as president of the United Typothetæ of America, against George L. Berry and others. From an order refusing to continue an injunction, plaintiff appeals. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

William C. Breed (John G. Saxe, on the brief), for appellant.
Alfred Steckler (Levin L. Brown, on the brief), for respondents.

LAUGHLIN, J. The plaintiff and the defendants are voluntary unincorporated associations. The action is brought to restrain a strike by the members of the New York Printing Pressmen's Union No. 51, Franklin Association No. 23, and the Job Press Feeders' Union No. 1, which are subordinate unions of the defendant the International Printing Pressmen & Assistants' Union of North America, which for brevity will be referred to as the "International Union." The jurisdiction of a court of equity to enjoin a labor organization or its members from declaring a strike in violation of a contract, and the propriety of exercising such jurisdiction, are not fairly presented by the record, and therefore we refrain from expressing an opinion thereon.

The plaintiff is not an employer of men. It is an association of local branch associations, called "Local Typothetæ," which do not employ men; but their members are master printers, who employ pressmen. It has a local branch association in the city of New York, known as "The Typothetæ of the City of New York," which has upwards of 50 members engaged in the printing business in said city. It appears that a strike is threatened by the defendants the local unions against some of the members of the plaintiff's local branch association in New York. The theory upon which the action is brought is, not that the plaintiff will sustain any irreparable damage, but that the members of its local branch association against whom the strike is threatened will sustain such damages, and the action is brought in their behalf.

The objects of the plaintiff, so far as material to the question presented, as shown by its constitution, are:

"The mutual protection of its members against illegal or unjust interference with the enjoyment of their rights as citizens in the conduct of their business. The securing of mutual advice, co-operation, and assistance in all matters affecting trade conditions, either local or general. To secure and preserve equitable conditions in the workshops of our members, whereby the interests of both employer and employé shall be properly protected. The investigation and adjustment of any question arising between members and their employés which may be referred to and come within the jurisdiction of the association. The exchange of information and the cultivation of a community of interest and a fraternal spirit amongst its membership."

With respect to the powers of the plaintiff, its constitution provides as follows:

"It shall have power to legislate for its membership and determine all questions, arising between them or it and the trades unions or other employés, in regard to shop practice, hours of labor, apprentices, and every other question except wages, which, being governed by local conditions, shall be regulated by the local organizations. It shall have power to levy assessments for the emergency fund and make laws for its disbursement in the protection of its members, and shall be empowered to enforce its laws by fines imposed upon its members and by the withdrawal of their charters upon failure to comply with its laws as they may be from time to time enacted.

"No general law shall be enacted except at a regular annual convention, or at a special convention regularly called for the purpose, and by a vote of three-fourths of the delegates present, as provided in article III, section 2, the same having been reported upon favorably by the executive committee."

These provisions doubtless authorized the plaintiff to legislate on the subjects specified for its subordinate branches with respect to the conditions upon which their members shall employ men, excepting as to the rate of wages, which is expressly excluded from its jurisdiction; but it is doubtful whether they authorized the plaintiff to make contracts in behalf of the members of the local associations, which would be binding upon the members thereof, to employ any pressmen, and it is not clear that it is authorized to maintain an action for the benefit of the members of its local branch associations.

The plaintiff association, however, assumed jurisdiction to make a contract in behalf of its local associations and the members thereof, with the defendant the International Union, regulating, among other things, the hours of labor, shop practices, and the adjustment of controversies for a period of 5 years, expiring on the 1st day of May, 1907. The members of the local associations of the plaintiff apparently observed the conditions of this contract in employing pressmen during that period; but it does not appear that formal contracts were made either between the local branch associations of the plaintiff or the members thereof and the local unions of the defendant the International Union. On the 8th day of January, 1907, an agreement purporting to be between the plaintiff and the defendant the International Union was signed by five individuals, who constituted a committee of the plaintiff association authorized to meet with a committee consisting of the directors of the defendant the International Union with a view to negotiating a renewal of the contract then in force, and by four of the five

members of the committee of the International Union. Immediately above the signatures the agreement contains a clause as follows: "Subject to ratification by the U. T. A. Convention." The signatures of the members of the committee purporting to represent the plaintiff appear first, and this clause had reference to the plaintiff; but it precedes all signatures. The defendant the International Union holds a convention annually in the month of June, and the plaintiff holds a convention annually in the month of September. It appears by the affidavit of the president of the plaintiff's local branch association in New York that the ratification of this contract by the plaintiff "was afterwards duly given by special conference held in the city of Pittsburg, Pa., on February 2, 1907"; but it does not appear that the ratification was by a convention of the plaintiff. Before the next convention of the plaintiff, after the agreement was signed, the defendant the International Union held its convention in June, 1907, and took action with respect to the contract to which reference will be made presently. The agreement of January 8, 1907, purports to be an agreement between the parties, to take effect on the 1st day of May, 1907, and to continue in force 5 years thereafter. Its provisions are, with one exception, the same in substance as those of the prior agreement for 5 years. The material difference is that under the former agreement it was provided that 54 hours should constitute a week's work, and under this new agreement it is provided that 54 hours shall constitute a week's work from May 1, 1907, until January 1, 1909, but that thereafter 48 hours should constitute a week's work. The change in that regard was from a 9-hour day to an 8-hour day; but it contains no provision that the pressmen should be paid the same wages for 8 hours as they theretofore received for 9. The question of securing for pressmen a change to an 8-hour day at the same wages as for 9 had received serious consideration at the convention of the International Union held in the month of June, 1906, preceding the expiration of the first 5-year contract. At that convention the outgoing board of directors reported that at the last preceding convention the question of a shorter workday had been delegated to them and that:

"They beg leave to report to the convention the following plan, whereby some tangible method or course may be arrived at that will result in the adoption of the eight-hour day by the I. P. P. & A. U. (1) That this convention instruct the incoming board of directors to meet as a committee with a like committee on the part of the United Typothetæ of America, as explained in the letter of Mr. McIntyre under date of April 28th, herein mentioned, the committee on our part to strive with all power possible to have some concessions made by the Typothetæ towards having the eight-hour day established within reasonable time, in a manner that will warrant its adoption on mutual grounds as a finality, and an agreement with that intent be entered into; the committee on our part having power to sign up such an agreement, if the eight-hour day can be brought within a reasonable time of attainment, if not, the committee to report back to our next convention, as provided in section 6 of this report. * * * (5) The question of what year and date the eight-hour day shall be adopted shall remain within the keeping of the incoming board of directors, they to report to the next convention in full their observations and judgments as to what our future course should be in setting a date for the adoption of the eight-hour day. (6) In view of the fact that our agreement with the United Typothetæ of America will not expire until May 1, 1907, the board of di-

rectors feel that the provisions of section 4 of this report would be the wisest course to follow, until at least another convention had followed the carrying out of the first three sections of this report, in order that an opportunity may be given the membership to understand our financial strength, as well as hearing from the incoming board of directors a report of the work done by them during the year towards an amicable adjustment of the shorter workday, or eight-hour day, with the United Typothetæ of America. * * * (11) The foregoing report is made in outline of what should be done by the membership towards acquiring the eight-hour day, and, while we all would like to see it come as soon as possible, we should not attempt to enforce it with a strike until all other means had failed to secure it, and our finances and organization are made such that, in the event of failure to accomplish our desire along the lines of easy approach, we can leave the date of enforcing it within the keeping of those whom we elect to administer our affairs, and then, when they inform us of what course we should pursue, we will know that the time has been carefully considered and our duty and finances will have to aid us in doing the rest."

The omitted parts of the report contained a recommendation with respect to assessments for the purpose of raising a fund to be known as the "Shorter Workday Fund" and recommended that efforts be made to place, not only their own members, but members of "the entire printing industry," upon the eight-hour day basis, the same as had been accomplished with the nine-hour day in 1898. This report was referred to the committee on officers' reports, and the report of that committee thereon was adopted, which, so far as material, was as follows:

"We, the committee, recommend that the board of directors be instructed to meet with a like committee on the part of the U. T. A., with instructions to secure a renewal of the agreement, with a declaration as to whether the eight-hour day will be agreed to. * * * The committee are pleased to coincide with the recommendations of the board of directors, inasmuch as they are of such a nature that the committee have seen fit to indorse the plan of assessment as formulated by the board, to wit: '* * * (2) That an assessment of 50 cents per month be levied upon all pressmen members monthly from July 1, 1906, until July 1, 1907. (3) That an assessment of 25 cents per month be levied upon all feeder or assistant members monthly during the same period. (4) That this fund be sent to the International Secretary-Treasurer monthly by the secretary of each local union, the same to be deposited in a different bank from that in which we deposit our regular funds, and the same to be known as the Shorter Workday Fund.' And that we recommend that this convention declare in favor of the eight-hour day immediately after the expiration of the agreement now existing between the U. T. A. and the I. P. P. & A. U., provided it is not within the scope of the possibilities of having same arranged amicably and equitably between the U. T. A. and the I. P. P. & A. U. within a reasonable time after the expiration of the agreement now existing between these two respective organizations. The committee further recommend that steps be taken by the board of directors to act in conjunction with the other branches of the printing crafts for perfecting a plan whereby unity of action may be carried out in the adoption of the eight-hour day."

The board of directors of the International Printing Union consists of five members, who are its officers, namely, the president, three vice presidents, and the secretary-treasurer. The agreement of January 8, 1907, was negotiated and signed in behalf of the defendant the International Union by four of these directors. The fifth refused to sign. It appears by affidavit that at the convention of the International Union held in June, 1907, four resolutions, preceded by a preamble, and

apparently presented by some officer, committee, or delegate, were adopted, as follows:

"To the Officers and Members of the I. P. P. & A. U.:

"Whereas, our board of directors has renewed the agreement with the United Typothetæ of America: Now, therefore, be it

"Resolved, that said agreement is hereby ratified and approved, provided the 'open shop' clause is stricken out and an amendment is inserted providing for nine hours' pay for the eight-hour day.

"And be it further resolved, that in the event the U. T. A. rejects these amendments our board of directors are instructed to submit the question of the immediate inauguration of the eight-hour day to the referendum, said referendum to be taken thirty days after such rejection.

"Resolved. that a shorter workday assessment of 10 per cent. be levied upon the membership of the I. P. P. & A. U. membership, the money to be collected to be put in the Shorter Workday fund; and be it further

"Resolved, that the foregoing resolution be submitted to the referendum as part of and incorporated in proposition No. 18, which provides for the immediate inauguration of the eight-hour day, provided certain amendments to an agreement are rejected by the U. T. A."

The board of directors of the International Union attended the convention of the plaintiff in September, 1907, with a view to having the agreement of January 8, 1907, amended in accordance with the action of the convention of the International Union, but were unsuccessful, and no further understanding on these subjects was reached between the interested parties. The three local unions which are defendants endeavored to obtain like concessions from the employers of their members, and, being unsuccessful, have threatened to call a strike of their members. It is not claimed that either of the defendants, the New York Printing Pressmen's Union No. 51, or the Job Press Feeders' Union No. 1, has in any manner ratified the agreement of January 8, 1907; but it is claimed that the defendant the Franklin Association No. 23 has ratified it. The plaintiff for such ratification relies upon two contracts purporting to be made between its local branch association in New York and the Franklin Association, one under date of March 4, 1907, and the other under date of April 19, 1907. The agreement of March 4th was not signed by any officer or member of the Franklin Association, or by its authority, and was never ratified by it. It appeared that the Franklin Association had been negotiating an agreement with the Typothetæ of the City of New York, but that they were unable to come to an understanding, and two of the officers of the International Union, not only without, so far as appears, authority of the Franklin Association, but without authority from the International Union, signed this agreement of March 4th with the officers of the Typothetæ of the City of New York. The agreement of April 19th was signed by the president of the Typothetæ of the City of New York for his organization and by

"Thos. J. Moran—Franklin #23.
"John P. Mines       "   #   "

It appears that Moran was the business agent and Mines was president of the Franklin Association; but it does not appear that they were authorized to sign the agreement for the association. It is shown by the affidavit of Moran that he signed on the representation that it

was an agreement to have the differences between the two associations arbitrated by the officers of their respective international associations, and that he and Mines were ex officio members of a committee of seven, duly appointed by the Franklin Association on the 24th day of February, 1907, to negotiate a contract with the Typothetæ of the City of New York; that neither he nor Mines had any further or other authority from the association; that they did not consult the other members of the committee, and were not authorized to act for them, and that neither their action in signing this contract, nor the action of the officers of the International Printing Union in signing the contract of March 4th, was reported to or ratified by the Franklin Association. The agreement of January 8, 1907, does not purport to obligate the members of any subordinate union of the International Union to work for members of the plaintiff's local branch associations, nor does it obligate the latter to employ the former. It merely prescribed the terms and conditions under which men when employed should work. The plaintiff, therefore, shows no basis for its action, unless it be that part of the agreement of January 8, 1907, which purports to obligate the International Union from declaring a strike during the continuance of the contract, unless for a violation of the contract, and purports to obligate the members of plaintiff's subordinate local branches not to engage in any lockout, excepting in case of a breach of the contract by a local union of the International Union or its members.

Under the constitution of the International Union and the constitution and by-laws of its local unions, a strike probably could not be successfully inaugurated if its officers were enjoined from authorizing it, because a strike may not be called by a local union without the approval of the majority of the officers of the International Union, and, should it be called without such approval, the members thus striking would not be entitled to receive the allowance of $7 per week for married men and $5 for single men to which they are entitled from the treasury of the International Union for a period of eight weeks, provided the strike is regularly called and duly authorized, which allowance may be continued longer in certain contingencies. Aside from the question as to whether four of the five directors, acting as a special committee, could bind the International Union to a contract which the five might have made, there is grave doubt as to whether it was competent for the committee to bind the International Union by this contract, which postponed the going into effect of the 8-hour day for a period of 20 months after the expiration of the contract under which the parties were then acting, and even then did not secure the same wages for the 8-hour day as for the 9. There is much force in the argument that the authority of the committee was to make a tentative agreement, unless the plaintiff yielded to the 8-hour demand, and to report their action, as was apparently done, to the next convention. There are some things in the action of the convention of 1906 indicating that this was the intention, and the action of the convention in 1907 only constituted a ratification of the agreement if amended in two particulars. The 8-hour clause in the agreement of January 8, 1907, was of no practical value, for it did not secure the

right to the pressmen to pay as for a previous 9-hour day, and this is emphasized by the refusal of the convention of the plaintiff in 1907 to accept the amendment proposed in that regard. It is quite clear that the authority conferred by the convention of the International Union in 1906 upon the committee to negotiate a renewal of the contract was to secure to the pressman an 8-hour day without reduction in wages within a reasonable time. It follows, therefore, that the motion for the injunction was properly denied.

The order appealed from should be affirmed, with $10 costs and disbursements. All concur.